JUDSON *et al.* v. EASTON *et al.*, appellants.

*Chattel mortgage — rights of mortgagee.*

A mortgage upon a canal boat was filed in the town clerk's office, in the custom-house and in the office of the auditor of the canal department. Afterward the mortgagor chartered the boat to defendants for the navigation season. Before the season closed the mortgagees, upon default, took possession of the boat. *Held,* that the rights of the defendants were subordinate to those of the mortgagees who were entitled to foreclose and were not estopped from doing so because the charter was made with their knowledge.

APPEAL from a judgment entered upon the report of a referee. The facts appear in the opinion.

*Goodrich & Wheeler,* for appellants.

*A. Perry* and *Wm. Tiffany,* for respondents.

MULLIN, P. J.  This is an action of trover for the conversion of the canal-boat W. B. Shaw by the defendants.

In March, 1870, the plaintiff sold the boat to one Foster and took back a mortgage upon it to secure the purchase-money.  The mortgage was filed in the town clerk's office of the town the mortgagor resided on the 31st of March, 1870, and a copy in the office of the auditor of the canal department on the same day, a copy was duly recorded in the custom-house at Oswego, on the 31st March, 1870.  A copy was filed in the clerk's office at Granby, on the 13th April, 1871, and in the auditor's office on the 15th of the same month, and there was indorsed on each a certificate of the amount then due.  Foster remained in possession of said boat until the 28th April, 1871, when he entered into an agreement in writing with the defendants, whereby said Foster agreed to charter to the defendants the said boat, to go wherever they might elect, and to send her and carry such freight to the extent of her capacity as they might desire to ship from the 1st May, 1871, until the close of inland navigation between the cities of New York and Baltimore.  Said Foster further agreed to keep at all times on said boat one able-bodied seaman, besides the captain, to outfit and keep her supplied with all equipments suitable and sufficient for the service required and to keep her in good repair. Foster run the boat under this arrangement until the 1st of October, 1871.  On the 11th of that month plaintiffs took possession of said boat, and gave notice thereof to Foster and the defendants, and of their intention to foreclose their mortgage.

The defendants took forcible possession of the boat, and converted it to their own use.

The defendants, in their answer, set up as a defense their right to the possession of the boat by virtue of the charter hereinbefore mentioned.

The charter, as it is called, was given a year after the mortgage, and as a consequence subordinate thereto.

The plaintiffs were not parties thereto, and they were entitled, on breach of the condition of the mortgage, to seize and sell the boat, and thus terminate the charter.

This is precisely what they did, and this being done all rights under the charter were gone.  But the appellants' counsel insists that the plaintiffs knew of and assented to the charter, and are therefore estopped from taking any steps to destroy it.  The coun-

sel cannot avail himself of the estoppel, if there is one, until its existence is found by the referee.

It was not found, nor any fact from which it may be inferred. Recording the mortgage in the custom-house made it a valid lien on the vessel under the laws of the United States. Ch. 27, Laws of the United States, 1850, § 1. It being valid under the State law, I am not aware of any reason why plaintiffs could not take possession of it when the condition of it was broken. No proceedings in admiralty or elsewhere were necessary to perfect plaintiffs' legal title to the boat, and the subsequent conversion entitled plaintiff to sue. 13 U. S. Laws, 139, requiring boats to be enrolled, etc.; 16 U. S. Laws, 594.

The judgment must be affirmed.

*Judgment affirmed.*